Smith et al. *v.* Wehrly, Appellant.

[Marked to be reported.]

| | |
|---|---|
| 157 | 407 |
| 23 SC | ³167 |
| 157 | 407 |
| 24 SC | ³324 |
| 157 | 407 |
| 34 SC | 19 |

*Interpretation of statutes—Repeal.*

Later statutes, which do not abrogate settled practice or repeal former statutes, are to be expounded as near to the use and reason of the prior law as can be, without violation of their intent.

*Judgment of justice of the peace.—Transcript—Execution—Scire facias —Repeal of statutes—Acts of May 5, 1854, and June 24, 1885.*

The act of May 5, 1854, P. L. 581, which provides that no execution shall issue on a judgment of a justice of the peace after five years unless revived by scire facias, is not repealed by the act of June 24, 1885, P. L. 160, relating to the filing of transcript of such judgment in the common pleas and to the issuing of execution thereon.

Taking the two acts together, it is meant that the judgment on the justice's docket, alive, ready for execution five years from the date it was rendered, can, during that time, by transcript, be entered in the common pleas, and, if there be a return of "no goods" to an execution upon it in that time, either before or after filing of transcript, it has all the force of a judgment of the common pleas originally obtained in that court. But, if the judgment be impossible of execution under the act of 1854, because five years have elapsed, then scire facias must issue on it as provided in that act, and after the judgment on the scire facias is had, there must be a return of "no goods" within the next five years by the constable (except now under the act of May 9, 1889, where the judgment is $100 or upwards) before execution can be levied on either real or personal estate from the common pleas.

The act of May 9, 1889, P. L. 176, which dispenses with execution before the justice on judgments of $100 and upwards does not dispense with scire facias after five years.

Argued May 5, 1893.    Appeal, No. 59, July T., 1892, by defendant, George Wehrly, from order of C. P. Lancaster Co., Nov. T., 1889, No. 88, in favor of plaintiff, H. G. Smith & Co., discharging rule to set aside execution.    Before STERRETT, C. J., GREEN, MITCHELL, DEAN and THOMPSON, JJ.

Rule to stay execution and open judgment. Testatum fieri facias to York county on judgment of justice of the peace. Before LIVINGSTON, P. J.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was order discharging rule to stay execution.

*B. F. Davis*, for appellant.—The proceedings were in violation of the act of May 5, 1854, P. L. 581: Bannan v. Rathbone, 3 Grant, 259.

The court below seemed to be under the impression that the act of June 24, 1885, P. L. 160, allowed the proceeding in question. That act does not repeal the act of May 5, 1854; it was not intended to be a substitute for it; they are concurrent. Implied repeals are not favored: Erie v. Bootz, 72 Pa. 196.

Even if the former act was repealed, the appellant would not be affected. The judgment was entered in 1877. The second act was passed in 1885, more than five years after the rendition of judgment. His right to be notified by scire facias was vested, and where civil rights are affected, even repealing acts are not to be construed so as to have a retrospective operation.

The act of 1885 is not retroactive. Legislation is never to have retroactive effect, except when enjoined by the most explicit language: Becker's Ap., 27 Pa. 52; Morrison v. Fayette Co., 127 Pa. 110.

There can be no question that the court below had the power to set aside or stay the execution, in this case, as it issued out of said court. It may strike off the judgment of a justice: Allen v. Krips, 119 Pa. 1; Pantall v. Dickey, 123 Pa. 431; McKinney v. Brown, 130 Pa. 365.

The act does not contemplate that a testatum fi. fa. should issue on a transcript of a justice, only on an original judgment of a court of record.

*J. W. Johnson*, for appellee.—It was held prior to the act of June 24, 1885, P. L. 160, that a transcript from the docket of a justice of the peace might be entered in the court of common pleas as a judgment, even as long a time as nineteen years after the entry of judgment by the justice: Diamond v. Tobias, 12 Pa. 312; Kaufelt v. Fisher, 1 Pears. 79.

Up to June 24, 1885, plaintiff could, on a justice's transcript, proceed by execution in the common pleas, only against defendant's real estate; if he wished to proceed against defendant's personal property, it was necessary for him to go back to the original judgment on the justice's docket, and issue execution there. Should it be desirable to issue execution in the common pleas to reach personal property as well as real estate, it was only necessary to revive the judgment in the common pleas by scire facias: Bannon v. Rathbone, 3 Grant, 259; Harmony Building Association v. Berger, 14 W. N. 499.

Opinion by Mr. Justice Dean, October 2, 1893:

The plaintiffs, on November 12, 1877, obtained judgment before Alderman Spurrier, of Lancaster, against defendant in sum of $76.32. There were regular service, appearance and hearing on the day appointed, proof of claim, then judgment. The learned court below was clearly right in holding that the judgment of the alderman should not be disturbed. The only question for consideration is, whether the subsequent proceedings are clearly authorized by statute.

After the judgment was entered, on 4th of December, 1877, plaintiffs issued execution, to which the constable returned "no goods;" February 6, 1878, alias execution issued, to which there was a like return. The judgment then slept on the alderman's docket until November 21, 1891, nearly fourteen years, when plaintiffs took a transcript, entered it in the common pleas, and at once issued a testatum fi. fa. to the sheriff of York county, who seized defendant's personal property. Defendant then obtained from the Lancaster common pleas this rule to show cause why execution should not be set aside. On hearing, the court below, being of opinion that the proceeding was authorized by act of June 24, 1885, discharged the rule, and from that decree comes this appeal.

The question raised is not altogether free from doubt. The act of 1885 says: "In all cases where a judgment has been obtained before a justice of the peace, city recorder, magistrate or alderman of this commonwealth, and no appeal or certiorari has been taken to said judgment, and a transcript of said judgment has been filed in the office of the prothonotary of the county where said judgment is obtained, such judgments shall

thereafter be and have all the force and effect of a judgment originally obtained in the common pleas of said county." It is then provided that, before execution shall issue on such judgment, there shall have been a return of " no goods " to an execution issued by the justice or alderman.

As already noticed, this transcript shows a return of " no goods " by the constable immediately after the judgment was rendered. Hence, it is argued by appellees, if under the act of 1885 when filed in the office of the prothonotary it is to " have all the force and effect of a judgment originally obtained in the common pleas," the right to issue execution to York county and levy on defendant's personal property cannot be denied. To give this act the scope which, standing by itself, its language would probably warrant, the right claimed by plaintiffs would follow. But, in construing a statute, the question is not alone how comprehensive and sweeping an effect, from its words, can be given it, but what, in view of the existing law and the absence of express repealing words, was intended ?

For more than thirty years there had been upon the statute book this act: " No execution shall be issued on a judgment rendered before a justice of the peace or alderman, after five years from the rendition of such judgment, unless the same shall have been revived by scire facias or amicable confession : " Act of May 5, 1854.

This law was passed to meet a very general demand for it; before its passage, cases of manifest injustice and great hardship were of frequent occurrence, because of sudden seizures of property of small debtors, without warning, on old judgments remaining open on justices' dockets. In some cases, the defendant claimed he had made payment to the officer or the plaintiff, and no entry had been made; and up until the act of 1869, he was not even heard as a witness ; in some cases, the justice who entered the judgment had died or removed, and the docket was in possession of another, who certified the transcript. To require that plaintiff, at the expiration of five years, should call on his debtor by scire facias to show cause why execution should not issue, before making seizure of his goods, was no hardship to the creditor, and gave an opportunity for hearing to the debtor. This act had been in force more than thirty years, with the approbation of the people and the legal

profession, when the act of 1885 was passed; to give to the words of this last act the meaning contended for by appellees, is, in effect, to repeal the act of 1854; the one says, no execution shall be issued on a judgment, rendered before a justice of the peace or alderman, after five years from the rendition of such judgment, unless the same shall have been revived by scire facias; but if appellees' contention be sustained, the mere filing of a transcript in the prothonotary's office within twenty years from the date of the judgment gives full life to it, with the right to immediate execution directed to the sheriff of any county in the commonwealth.

The debtor may have paid the judgment to the plaintiff and all evidence of it have been lost; the right of the plaintiff, by his death, may have passed to personal representatives having no knowledge of the payment; a dishonest or neglectful officer may have received the money, and in the meantime may have died or removed. The first warning the debtor has that payment is still claimed, is the seizure of his goods by the sheriff. It is but an inadequate remedy to say, he can travel from his home, perhaps in a distant county, and make application to the court from which the execution issued to set it aside; this is but saying to him, even if he can bring proof of payment, he shall be harassed for months with a lawsuit, and in the meantime his goods shall remain in custody of the sheriff.

All the evils which the act of 1854 sought to cure are, under such a construction of the act of 1885, revived. Unquestionably, the legislature could have repealed the act of 1854, but it did not, either expressly or by implication; it stands in full force, and is to be given the effect which its peremptory language demands.

In view of this, then, what effect is to be given the act of 1885? It is a maxim that later statutes, which do not abrogate settled practice or repeal former statutes, are to be expounded as near to the use and reason of the prior law as can be, without violation of their intent. With the act of 1854, then, not affected by the act of 1885, we must give the last act such effect as shall carry out its purpose in harmony with the first one.

At the date of the passage of the act of 1885, transcripts had for seventy-five years been filed under the act of March 20, 1810, by the express terms of which act they became liens on

the real estate of the debtor from the date of filing. But under this act, there were many conflicting decisions. A dictum of Justice ROGERS, in Hitchcock v. Long, 2 W. & S. 171, seemed to indicate that the transcript, when filed, became, so far as concerned execution, a judgment of the common pleas, and the levy was not restricted to real estate ; but this was not followed by the lower courts in Reichenbauch v. Arnold, 2 Clark, 527 ; Bradley v. Ward, 6 W. N. 366; Lyter v. Dunkel, 2 Pears. 283, and in a number of other cases. It was followed, however, and held to be the law in Hamilton v. Dawson, 2 Clark, 357 ; Techner v. Karpeles, 7 W. N. 258, and Weir v. Lawrence, 9 Ibid. 207. This last case was in common pleas of Philadelphia, in 1880, and the learned judge who rendered the decision said : " We would conform to any construction of the act of 1810 that might be considered settled, but unfortunately there is no settled practice on the subject; " and so he followed Techner v. Karpeles, . the last considered case on the question. Such was the unsettled state of the law when the act of 1885 was passed, and it was obviously framed to end all doubt raised by the contradictory decisions under the act of 1810. While a much broader meaning can be given its words, as was done in the court below, we are not bound to give them such meaning, unless that was their obvious intent. We do not think it was. The act of 1810 says, the transcript from the time of filing " shall bind the real estate of defendant; " the act of 1885 says, the transcript shall, after filing, " have all the force and effect of a judgment originally obtained in the court of common pleas of said county." That is, whereas, by the act of 1810, it was a subject of doubt whether execution could be had on other than real estate, it is now enacted that execution may be levied on both personalty and realty, as if the judgment were a judgment of the common pleas. But it does not necessarily follow the act of 1885 gives the transcript any newer or higher life than the judgment on the docket from which it was taken. The jurisdiction of the justice was not affected because the common pleas, by filing the transcript, acquired a concurrent jurisdiction, nor were the rights of the debtor taken from him as fixed by the act of 1854. This is shown, not only by the absence of express words in the act of 1885 modifying or changing the proceedings before the justice, but by the proviso which contemplates prob-

able execution to the constable from the docket of the justice after filing the transcript.

Then, taking the two acts together, it is meant that the judgment on the justice's docket, alive, ready for execution for five years from the date it was rendered, can, during that time, by transcript, be entered in the common pleas, and if there be a return of " no goods " to execution upon it in that time, either before or after filing of transcript, it has all the force of a judgment of the common pleas originally obtained in that court. But if the judgment be impossible of execution under the act of 1854, because five years have elapsed, then scire facias must issue on it as provided in that act, and, after the judgment on the scire facias is had, there must be a return of "no goods " within the next five years by the constable, except now under the act of 1889, where the judgment is $100 or upwards, before execution can be levied on either real or personal estate from the common pleas. Unless this be so, the act of 1885 was, up until the act of 1889, of no benefit whatever to the judgment creditor who had not issued execution, had a return of " no goods," and filed his transcript within the first five years from the entry of his judgment. By the act of 1885, he cannot issue execution from the common pleas until after execution from the justice's docket; if he now issues before the justice on a sum under $100, the court will set the execution aside on certiorari, because issued in direct violation of the prohibition of the act of 1854. He must, first, in all cases, whether under or over $100, before he can get his judgment ripe for execution in the common pleas, if he have allowed the five years to elapse, issue scire facias before the justice ; or, as held by this court in Green v. Leymer, 3 Watts, 381, he may file the transcript of his judgment in the common pleas, issue scire facias thereon, there, and have judgment, on which execution can issue against either real or personal property. But, in either case, the defendant would be warned, and have his day in court to show payment.

We are clearly of opinion, it was not intended by the act of 1885 that the creditor, by the mere filing of a transcript of a judgment fourteen years old, without notice to the debtor, should thereby have the right to seize the debtor's property in any county in the commonwealth. While the judgment of the

justice is conclusive against the debtor, and establishes that, when it was rendered, he owed to the plaintiffs the amount of it ; and while the law declares him subject to execution, both before the justice and in the common pleas for five years, that is the extent of the liability, until judgment on scire facias determines he has not paid it. It is not a reasonable interpretation of the act of 1885 to hold that the legislature intended the creditor, by the mere filing of a transcript, should make a live judgment out of one already dead to execution for nine years, under the act of 1854.

The act of May 19, 1887, clearly refers only to judgments originally obtained in courts of record, or which, by regular proceedings according to the course of the law before inferior courts, have by transcript been given the force of judgments obtained in the common pleas. It was not intended to declare a transcript of a judgment from an alderman's docket, filed more than five years after the judgment was rendered, without a scire facias, a judgment of a court of record.

The act of May 9, 1889, which dispenses with execution before the justice on judgments of $100 and upwards, only confirms the view we have taken of the intent of the act of 1885. It does not dispense with scire facias after five years, and in this essential particular does not touch the act of 1854. The proviso contemplates an immediate filing of the transcript after judgment, for it says nothing in the act shall deprive the defendant of the right of certiorari and appeal, notwithstanding the entry of the transcript and execution thereon from the common pleas. As both certiorari and appeal must be taken within twenty days from entry of judgment, the transcript, it was assumed, would be filed promptly after judgment. In neither of the three acts, 1885, 1887, or 1889, is any intention disclosed to revive a judgment, by the mere filing of a transcript, which, under the act of 1854, had become lifeless.

For these reasons, we think the decree of the court below, in so far as it removes the stay of execution, was error ; therefore it is directed that test. fi. fa. No. 15, directed to the sheriff of York county, be set aside ; the costs on said execution and on this appeal to be paid by appellees.